1 [Reprinted by permission.]

McKAY, In re. See Case No. 323.
McKAY, In re. See Case No. 11,978.
MACKAY (ALLEN v.). See Case No. 228.

## Case No. 8,839.

### McKAY v. CAMPBELL.

[1 Sawy. 374; [1] 2 Abb. U. S. 120; 3 Am. Law T. Rep. U. S. Cts. 186.]

District Court, D. Oregon. Sept. 26, 1870.

PLEADING AT LAW—DUPLICITY—CONSTRUCTION OF FIFTEENTH AMENDMENT—RIGHT TO VOTE UNDER LAW OF OREGON—PENALTY.

1. Duplicity in pleading is forbidden by both the common law and the Code as tending to prolixity and confusion, but under the Code objection to duplicity is to be made by a motion to strike out the pleading rather than by special demurrer as at common law.

2. If a complaint contains more than one cause of action they must be separately stated or it will be liable to be stricken out for duplicity.

3. Under the fifteenth amendment to the constitution and the act of May 31, 1870 (16 Stat. 140), to enforce it, all persons declared citizens of the United States by the fourteenth amendment are entitled to vote in the states where they reside, at all elections by the people, without distinction of race, color or previous condition of servitude; but the several states, notwithstanding the amendment, have the power to deny the right of suffrage to any citizens of the United States on account of age, sex, place of birth, vocation, want of property or intelligence, neglect of civic duties, crime or other cause not specified in the amendment.

4. The power of congress over the subject of the right to vote in the several states is conferred by the fifteenth amendment and is confined to the enforcement of such amendment, by preventing the states from discriminating between citizens of the United States in the matter of the right to vote, on account of race, color or previous condition of servitude.

5. Under the law of Oregon when a person offers to vote and is duly challenged, thereafter his right to vote depends upon his taking the oath that he is a qualified elector as prescribed in section 13 of the election law (Code Or. p. 700), and it then becomes the duty of the judges of election to tender him such oath, and administer it to him, if he is willing to take it.

6. The taking of this oath by the party offering to vote after he is challenged, is a necessary prerequisite to the right to vote within the meaning of section 2 of the act of congress, aforesaid, and a refusal or omission upon the part of the judges to give such party an opportunity to take it, is a violation of such section, if the same be done on account of his race, color or previous condition of servitude, but not otherwise.

7. In an action to recover a penalty under section 2 of the act of congress, aforesaid, it must appear from the complaint, that the plaintiff was a citizen of the United States, and otherwise qualified to vote at the time and place mentioned in the complaint; and that the defendant refused or knowingly omitted to furnish the plaintiff an opportunity to become qualified to vote, as by refusing or knowingly omitting to swear the plaintiff to his qualifications as an elector, when the law of the state made it his duty so to do, and that such refusal or omission was on account of the race, color or previous condition of servitude of plaintiff.

1 [Reported by L. S. B. Sawyer, Esq., and by Benjamin Vaughan Abbott, Esq., and here compiled and reprinted by permission.]

[This was an action by William C. McKay against James A. Campbell to recover a certain penalty provided by an act of congress for having been wrongfully prevented from voting. The case is now heard on the defendant's demurrer.]

John H. Mitchell and John C. Cartwright, for plaintiff.

James K. Kelly, for defendant.

DEADY, District Judge. This action was commenced July 1, 1870, to recover a penalty of $500 under and in pursuance of section 2 of "An act to enforce the rights of citizens of the United States to vote in the several states of this Union, and for other purposes," approved May 31, 1870 (16 Stat. 140).

Among other things it is alleged in the complaint that on June 6, 1870, as provided by law, a general election was held in the state of Oregon and county of Wasco therein, at which a representative in congress, and also state and county officers, were voted for and elected, and that on said day and long prior thereto, the plaintiff was a citizen of the United States, and a resident of East Dalles in said county and state, and legally entitled to vote at such election in the precinct aforesaid for all such offices. That on said day defendant was acting as judge of election in said precinct, in conjunction with George Corum and Thomas M. Ward, and as such judge was required by law to receive votes from the electors, and perform other duties required by law of such an officer; and that on said day the plaintiff appeared at the polls in said precinct and offered his vote for Joseph G. Wilson as a representative in congress, and for Joel Palmer for governor of Oregon, and for others for different state officers, and for John Darrah for sheriff of said county, and for others for the different county offices; and that "the defendant combining with the other said judges, unlawfully and wrongfully prevented him from voting, that defendant, confederating with said Ward and Corum unlawfully and wilfully refused his vote—refused to swear him to his qualification as an elector—refused to enter his name on the poll books of said precinct, and refused to enter on record in said book his vote for the different candidates for whom he preferred to vote. All of which duties, though required of him by the laws of Oregon, he, the defendant, wrongfully and wilfully failed and refused to do, though requested to do so by plaintiff—that defendant with said Ward and Corum ordered him away from said polls, and deprived him of his right as a citizen to vote, to his damage. By reason of which unlawful acts of said defendant, so acting and combining with said others, plaintiff has suffered damages; and he, defendant, forfeited and became liable as provided by law to pay said plaintiff therefor the sum of five hundred dollars, for which sum, with costs and allowances as provided by law, plaintiff now asks judg-

ment of the court." On July 8, the defendant demurred to the complaint, and for cause of demurrer alleged: (1) That it did not state facts sufficient to constitute a cause of action. (2) That several causes of action have been improperly united therein. On August 2 and 3 the demurrer was argued by counsel and submitted.

Duplicity in pleading, or the statement of more than one sufficient matter as a ground of action or defense thereto in the same count or plea, is forbidden by the common law and the Code as tending to useless prolixity and confusion. 1 Chit. Pl. 259; Gould, Pl. 220, Code Or. pp. 157, 161, 163. Duplicity in pleading being however only an error in form, at common law the objection had to be made by special demurrer. Chit. Pl. 701; Gould, Pl. 466. The Code having practically abolished special demurrers except in the instances enumerated in title 8 of chapter 1, has substituted the motion to strike out for the special demurrer in the case of duplicity in pleading. It provides (section 103): "When any pleading contains more than one cause of action or defense, if the same be not pleaded separately, such pleading may, on motion of the adverse party, be stricken out of the case." For these reasons, I conclude that as to the second ground stated, this demurrer is not well taken and that the objection should have been made by a motion to strike out the complaint.

As this demurrer must be sustained upon the ground that the complaint does not state facts sufficient to constitute a cause of action, it may be well enough to briefly consider the question of duplicity in the complaint, so that the plaintiff, if he desires to amend, may frame his amended complaint accordingly. The complaint contains but one count or statement of a cause of action, but it is alleged therein that the defendant, in conjunction with the other judges of election, unlawfully and wrongfully prevented the plaintiff from voting for representative in congress and for governor of the state of Oregon, and for other state officers, and for sheriff of the county and for other "county offices." Now, if it was unlawful to prevent the plaintiff from voting for any one of the candidates for these several offices, that, it appears to me, is a separate and distinct cause of action, and should have been separately stated. But the complaint alleges, not only that the defendant prevented the plaintiff from voting for a certain candidate for each of these offices, but that the defendant unlawfully and wilfully refused his vote—refused to swear him as to his qualifications as an elector—refused to enter his name on the poll books—refused to enter his vote, etc. Here are four different acts, in addition to the first one stated, alleged to have been committed by the defendant, each of which are assumed by the pleader to be a distinct violation of the act of congress, and consequently a separate

cause of action. If so, they should have been stated or pleaded separately, so as to avoid the prolixity and confusion necessarily resulting from jumbling them together in one count or statement.

It is a question, whether some of these alleged refusals are sufficient to support an action for the penalty given by the act. It does not appear that the penalty given by section 2 of the act, is given for preventing a person from voting or for refusing to receive or record a vote, but for refusing or knowingly omitting to give full effect to such section. Now, this section substantially provides, that if the law of the state requires any act to be done as a prerequisite or qualification for voting, and by such law, officers are charged with the performance of duties in furnishing to citizens an opportunity to perform such prerequisite, or to become qualified to vote, it shall be the duty of such officers to give to all citizens of the United States an equal opportunity to perform such prerequisite and become qualified to vote, without distinction of race, color or previous condition of servitude. What amounts to a refusal or wilful omission to give effect to this section, upon the part of the state officers, depends upon the duties imposed upon these officers in this respect by the law of the state. Upon examination, it does not appear that the section commands these officers to admit or permit citizens of the United States "to vote without distinction of race, color or previous condition of servitude," but to only give such citizens an equal opportunity to become qualified to vote according to the law of the state and to perform any act which the law of the state may require as a prerequisite—a condition precedent—to voting. The duty which this section enjoins upon the officers is something or anything which the state law requires the officer to do, so as to enable the citizen to qualify himself to vote, and from the nature of things, it must precede, in point of time and order, the act of voting, or anything subsequent thereto. If these suggestions be sound, then none of the acts complained of by the complaint are within the purview of the section, except the refusal to swear the plaintiff to his qualifications as an elector.

The law of this state provides (Code Or. p. 700), that "Sec. 13. If any person offering to vote shall be challenged as unqualified, by any judge or clerk of the election, or by any other person entitled to vote at the same poll, the judges shall declare to the person so challenged, the qualifications of an elector; if such person shall then state himself duly qualified, and the challenge shall not be withdrawn, one of the judges shall then tender to him the following oath: You do solemnly swear, etc. (to the effect that the affiant had all the qualifications necessary to authorize him to vote at that poll). And if any person so challenged shall refuse to

take such oath so tendered, his vote shall be rejected.

"Sec. 14. If any person so offering such vote shall take such oath, his vote shall be received, unless it shall be proven by evidence satisfactory to the majority of the judges that he does not possess the qualifications of an elector, in which case a majority of such judges are authorized to reject such vote."

It seems to me that whenever a person offering a vote is challenged, that it then becomes necessary that he should take this qualifying oath before he can be said to be qualified to vote. By the interposition of the challenge it becomes incumbent upon him to perform this prerequisite, to entitle himself to vote. But he cannot take this oath and perform this prerequisite without the judges shall furnish him an opportunity so to do. Therefore, the law of the state makes it the duty of the judges, or one of them, to tender and administer the oath to him. Then comes the law of congress and makes it the duty of the judges to give to all citizens, "without distinction of race, color or previous condition of servitude," the same and equal opportunities to perform this prerequisite—to take this oath—and thereby become qualified to vote. It follows, that a refusal or omission to furnish this equal opportunity to any person seeking to vote, on account of either race, color or previous condition of servitude, is a violation of the act.

As to the first ground of demurrer, I think it well taken. The complaint does not state facts sufficient to constitute a cause of action. The act of congress upon which this action is brought provides for enforcing the amendment to the constitution which declares (article 15):

"Section 1. The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state, on account of race, color or previous condition of servitude.

"Sec. 2. Congress shall have power to enforce this article by appropriate legislation."

The act also regulates the elections of representatives in congress, in pursuance of section 4, art. 1, of the constitution, which declares: "The times, places and manner of holding elections for senators and representatives shall be prescribed in each state by the legislature thereof; but the congress may at any time by law make or alter such regulations, except as to the place of choosing senators." Sections 2, 3 and 4 of the act, which relate to the enforcement of the amendment to the constitution, give penalties, to be recovered by civil action, against persons who violate them, but violations of that portion of the act regulating the election of representatives in congress are only punishable by indictment or information.

In considering the sufficiency of the complaint therefore, in this action, no special significance can be given to the fact that the

plaintiff offered to vote for a candidate for representative in congress.

By the fourteenth amendment to the constitution, it is declared that:

"Art. 14, § 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. * * *"

This clause of this amendment declares who are citizens of the United States and of the several states respectively. The fifteenth amendment above quoted, declares in effect that citizens of the United States and of the several states shall vote in their respective states at all elections by the people, without distinction on account of race, color or previous condition of servitude. But the amendment does not take away the power of the several states to deny the right of citizens of the United States to vote on any other account than those mentioned therein. For instance, notwithstanding the amendment, any state may deny the right of suffrage to citizens of the United States, on account of age, sex, place of birth, vocation, want of property or intelligence, neglect of civic duties, crime, etc. The power of congress in the premises is limited to the scope and object of the amendment. It can only legislate to enforce the amendment, that is, to secure the right to citizens of the United States to vote in the several states where they reside, without the distinction of race, color or previous condition of servitude. And this appears to be the intention of the act, so far as it relates to the enforcement of the amendment.

Section 1 declares in effect, that all citizens of the United States, being otherwise qualified by law, shall be allowed to vote at all elections by the people in any state, district, etc., without distinction of race, color or previous condition of servitude. Section 2 declares in effect that officers of the state shall furnish all citizens of the United States with the same and equal opportunities to become qualified to vote without distinction of race, color or previous condition of servitude. True, the language of sections 4 and 5, particularly the former, if taken literally would apply to acts and proceedings intended to prevent citizens of the United States from voting whether the same were done or carried on, on account of the race, color or previous condition of servitude of the citizen in question or not. But they ought to be construed so as to harmonize with the unambiguous sections which precede them, and must in any view of the matter, be construed so as to have effect only within the limits of the power conferred by the amendment on congress over the subject.

Upon this construction of the act, to maintain this action I think it would be necessary to prove on the trial: (1) That the plaintiff was a citizen of the United States and otherwise qualified to vote at the time and place mentioned in the complaint. (2) That the defendant refused or knowingly omitted to furnish the plaintiff an opportunity to become qualified to vote, as by refusing or knowingly omitting to swear the plaintiff to his qualifications as an elector, when the law of the state made it his duty so to do, and that such refusal or omission was on account of the race, color, or previous condition of servitude of the plaintiff. If it be necessary to prove these facts to maintain this action, they ought to be alleged in the complaint. Now the complaint is silent as to the reason of the defendant's refusal or omission to swear the plaintiff as to his qualifications as an elector. It may have been for some other reason than on account of his race, color, or previous condition of servitude, and then the plaintiff's remedy, if any, would be found under the state law and in the state tribunals. I know it may be said with much probability that disingenuous judges of election who are violently adverse to and prejudiced against the amendment and the act, may refuse or omit to allow a citizen to qualify himself to vote, ostensibly for some reason not within the purview of the act, but really and in fact on account of his race, color, or previous condition of servitude. But this is a question of fact, and if the evidence is sufficient the jury will be bound to disregard the pretences of the defendant and find according to what appears to have been the fact. Besides, to prevent a failure of justice on this account, it may be necessary and proper to hold in this class of cases, as in many others, that slight proof on the part of the plaintiff as to the reason of the defendant's refusal or omission, is sufficient to throw the burden of proof in this respect upon the latter. The demurrer must be sustained.

The plaintiff had until the first Monday in November to file an amended complaint upon the payment to the adverse party of $20. The same order was made in the following cases brought under the same act, and which, by the stipulation of the parties, were to abide the judgment on the demurrer in this, except that the $20 is to be paid but once: McKay v. George Corum; Same v. Thomas Ward; Peter de Lord v. James Farris; Same v. Daniel W. Butler; Same v. William McAtee.

[Subsequently the plaintiff filed an amended complaint: to this the defendant answered. The parties then filed an agreed statement of facts. Upon this the court entered judgment for the defendant. Case No. 8,840.]