*Ex parte* CHIN KING.

*Ex parte* CHAN SAN HEE.

(*Circuit Court, D. Oregon.* June 25, 1888.)

CHINESE—CITIZENSHIP—PERSONS BORN IN UNITED STATES—HABEAS CORPUS.
　　A child born in the United States of Chinese parents is, by the rule of the common law and the fourteenth amendment, a citizen of the United States, and, when restrained of its liberty of locomotion therein, may be delivered therefrom, on *habeas corpus*, by the proper national court.

(*Syllabus by the Court.*)

*Habeas Corpus.*

*Paul R. Deady*, for the petitioners.
*Lewis L. McArthur*, for the United States.

DEADY, J   The writ of *habeas corpus* in these cases was allowed and issued on June 25, 1888, and they were heard together on the same day.

The petition of Chin King states that she was born in San Francisco, Cal., on October 10, 1868; while that of Chan San Hee states that she was born in Portland, Or., on March 15, 1878; and they each state that they are restrained of their liberty by William Robert Laird, the master of the British bark Kitty, because the collector of customs for this port refuses to allow them to land from said bark, on the ground that the petitioners are Chinese, and have no return certificate, as required by the act of congress on that subject: but they aver that they are native-born citizens of the United States, and therefore not included within the terms of said act.

The return of the master to each writ states that the Kitty sailed from Hong Kong for Portland, on April 19, 1888, and that the petitioners were passengers thereon during said voyage, and are now in custody on board the same, for the reasons stated in the petitions.

On application the United States district attorney was allowed to intervene on behalf of the United States, and allege that he had no knowledge or information sufficient to form a belief as to whether the petitioners were born in the United States, as alleged, or not.

On the hearing it appeared that Chung Yip Gen is a Chinese merchant, who has lived and done business in this city for the past 13 years and for 12 years prior thereto in San Francisco; that he was married in San Francisco about 23 years ago, and the petitioners are his daughters, the older one having been born in San Francisco, and the younger one in Portland, and that in 1881 the father sent them and their mother to China, from whence they were to return when they pleased.

By the common law, a child born within the allegiance—the jurisdiction—of the United States, is born a subject or citizen thereof, without reference to the political *status* or condition of its parents.   *McKay* v. *Campbell*, 2 Sawy. 118; *In re Look Tin Sing*, 10 Sawy. 353, 21 Fed. Rep. 905; *Lynch* v. *Clarke*, 1 Sandf. Ch. 583.   In the latter case it was held that Julia Lynch, who was born in New York in 1849, of alien parents, during a temporary sojourn by them in that city, and returned with them the same year to their native country, where she resided until her death, was an American citizen.

The vice-chancellor, after an exhaustive examination of the law, declared that every person born within the dominion and allegiance of the United States was a citizen thereof, without reference to the situation of his parents.   This, of course, does not include the children born in the United States of parents engaged in the diplomatic service of foreign governments, whose residence, in contemplation of public law, is a part of their own country.

The rule of the common law on this subject has been incorporated into the fundamental law of the land.   The fourteenth amendment declares:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the state wherein they reside."

In *Re Look Tin Sing*, 10 Sawy. 353, 21 Fed. Rep. 905, it was held that a person born within the United States, of Chinese parents, not engaged in any diplomatic or official capacity under the emperor of China, is a citizen of the United States. The case is similar to that of the petitioners. The party in question was born in California in 1870, of Chinese parents. In 1879 he went to China, and returned to California in 1884, without the certificate provided for in the restriction act of 1882, or that of 1884, and was therefore denied the right to land.

Mr. Justice FIELD, in delivering the opinion of the court, in which SAWYER, SABIN, and HOFFMAN concurred, says, (p. 359:) "The inability of persons to become citizens under those laws (of naturalization) in no respect impairs the effect of their birth, or of the birth of their children, upon the status of either, as citizens of the United States."

. The only point made by the district attorney against the petitioners on the question of their·citizenship is that they left this country without, as he claims, any definite or fixed purpose to return.

But I think the evidence does not warrant so strong a statement. For aught that appears they intended to return; and the fact that they have returned gives strength to the inference. The most that can be said is, there was no time fixed for their return. And that is the case with hundreds of minor American citizens, who go abroad yearly, for nurture and education. But it seems that the citizenship of the petitioners would not be affected by the fact, if they had never come back, unless it also appears that they had in some formal and affirmative way renounced the same.

However, in my judgment, a father cannot deprive his minor child of the *status* of American citizenship, impressed upon it by the circumstances of its birth under the constitution and within the jurisdiction of the United States. This *status*, once acquired, can only be lost or changed by the act of the party when arrived at majority, and the consent of the government.

By section 2 of article 4 of the constitution it is provided: "The citizens of each state'shall be entitled to all privileges and immunities of citizens in the several states."

It has always been held that the privileges and immunities there referred to are fundamental; and that a citizen of one state may, at least, under this provision, pass through or reside in any other state of the Union for the ordinary pursuits or purposes of life. *Corfield* v. *Coryell*, 4 Wash. C. C. 380; *Paul* v. *Virginia*, 8 Wall. 180.

The action of the collector in these cases has the effect, and is so intended, to deny these citizens of the United States the right of free locomotion within the same,—the right to come into, pass through, or reside in this state, and is therefore contrary to and in violation of the constitutional provision guarantying such right to every citizen. Sections 751, 752, and 753 of the Revised Statutes provide, in effect, that the courts

of the United States and the judges thereof shall have power, by *habeas corpus*, to deliver a person held in custody or restrained of his liberty in violation of the constitution or of a law or treaty of the United States.

The petitioners, as we have seen, are restrained of their liberty in violation of the constitution, and therefore this court has jurisdiction to discharge them on a *habeas corpus*.

The petitioners are discharged from custody.