## Ex parte PALO.

(District Court, W. D. Washington, N. D. December 31, 1924. Supplemental Decision, January 1, 1925.)

### No. 9104.

Aliens ⬡═⇒23(1)—Native of Philippine Islands, of Chinese descent, held subject to exclusion laws.

A laborer of the Chinese race, though a native of the Philippine Islands, *held* subject to the exclusion laws.

Habeas Corpus. Petition of Paulo Palo for writ of habeas corpus to secure release from order of deportation. Denied.

The petitioner seeks release from an order of deportation. In his petition for writ of habeas corpus he states that he is a "native-born citizen" of the Philippine Islands, owing allegiance to the United States, and is denied admission and restrained of his liberty by the Commissioner of Immigration on the ground that he is an alien person, a "Chinese laborer"; that his restraint is without due process of law; and that, unless prevented by this court, he will be deported. A show cause order was issued, and the return of the Commissioner alleges that the petitioner is a "Chinese laborer," excluded under the Chinese exclusion laws; that upon appeal from the decision of the Board of Special Inquiry to the Secretary of Labor such decision was affirmed.

It is disclosed by the record that petitioner is 26 years of age, born in the Philippine Islands September 24, 1898. His father was a Chinese and his mother a Filipino. There is no evidence where the father was born. He died in China, to which country he went when the petitioner was 5 years old. "The father and mother did not go through a regular marriage." Petitioner had never been in China until, coming to the United States, he stopped 3 or 4 months at Hong Kong en route. He says he has worked as a cook, waiter, and carpenter; as a cook about two years immediately preceding his arrival. He speaks some English, Chinese very well, and no Spanish. In the Philippines he says he ordinarily speaks "mixed Chinese, English, and 'Tagalog.'" He reads and writes only English. He has a passport, issued at the city of Manila, May 7, 1924, which reads in part as follows:

"United States of America, The Philippine Islands.

"To All to Whom These Presents Shall Come—Greeting: I, the undersigned, Governor General of the Philippine Islands, hereby request all whom it may concern to permit Paulo Palo, a citizen of the Philippine Islands owing allegiance to the United States, safely and freely to pass, and in case of need to give him all lawful aid and protection. * * *

"Leonard Wood, Governor General."

Upon the passport is impressed the seal of the "Government of the Philippine Islands, United States of America."

Hugh C. Todd, of Seattle, Wash., for petitioner.

Donald G. Graham, Asst. U. S. Atty., of Seattle, Wash., for the United States.

NETERER, District Judge (after stating the facts as above). This court, in Ex parte Goon Dip, 1 F.(2d) 811, and Ex parte So Hakp Yon, 1 F.(2d) 814, interpreted the immigration laws with relation to some phases of the Chinese Treaty and Exclusion Act, and to the status of Japanese under the immigration law and treaty stipulation. The respondent contends that the rights of the petitioner must be determined by racial and not political status; that, being the son of a Chinese father, he is within the provisions of the acts excluding Chinese. See footnote, Goon Dip, supra.

Section 1, Act April 29, 1902, amended April 27, 1904 (section 4337, C. S.), provides: "All laws in force on the twenty-ninth day of April, 1902, * * * prohibiting the coming of Chinese persons or persons of Chinese descent into the United States * * * are * * * extended * * * and * * * shall * * * apply to the island territory under the jurisdiction of the United States, and prohibit the immigration of Chinese laborers, not citizens of the United States, from such island territory * * * whether in such island territory at the time of session or not, and from one portion of the island territory of the United States to another portion of said island territory. * * *"

By the Act of May 6, 1882 (Comp. St. §§ 4290–4302, 4359), amended July 5, 1884 (Comp. St. §§ 4290–4293, 4295, 4297–4302), the coming of Chinese laborers to the United States is suspended, and shall apply to Chinese whether subjects of China or any other foreign power. By the Act of September 13, 1888 (Comp. St. §§ 4306–4314), deportation of Chinese or persons of Chinese descent to the country whence they came, is authorized. The Act of May 5, 1892 (Comp. St. §§ 4315–4323), continues the provisions with respect to exclusion of Chinese or persons of Chinese descent, for the period of 10 years.

The Act of April 29, 1902 (Comp. St. §§ 4337–4339), amended and re-enacted and continued in force the laws relating to Chinese or persons of Chinese descent, and section 1 thereof (Comp. St. § 4337) provides that such law shall apply to Chinese laborers, whether in the Philippine Islands at the time of session or not, and section 2, Act Aug. 29, 1916, 39 Stat. 546 (Comp. St. § 3809), provides in substance that an inhabitant of the Philippine Islands, who was a subject on April 11, 1899, residing therein, shall be held a citizen of such islands, unless allegiance to the crown is preserved, and then empowers the Philippine Legislature to provide by law for acquisition of citizenship by the natives of the insular possessions, and such as are citizens of the United States, residing therein.

Section 9 of the Treaty says: "Spanish subjects, natives, * * * residing in the territory, * * * may remain. * * * In case they remain * * * they may preserve their allegiance to the crown of Spain * * * by making a declaration of their decision. * * * In default * * * they shall be held to have remained. * * * The civil rights and political status of the native inhabitants * * * shall be determined by the Congress."

Section 1, Act Feb. 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a), provides that "alien" shall "include any person not a native-born or naturalized citizen of the United States, but * * * not be held to include Indians of the United States not taxed or citizens of the islands under the jurisdiction of the United States. * * *"

Section 38, Act supra (section 4289¼u) provides: "That this act shall not be construed to repeal, alter, or amend existing laws relating to the immigration or exclusion of Chinese persons or persons of Chinese descent, except as provided in Section 19 hereof. * * *"

Section 19, 39 Stats. p. 890 (section 4289¼jj): "That the provisions of this section shall also apply to the cases of aliens who come to the mainland of the United States from the insular possessions thereof."

Section 1, Act Feb. 5, 1917 (section 4289¼a): "The term 'United States,' as used in the title as well as in the various sections of this act shall be construed to mean the United States, and any waters, territory, or other place subject to the jurisdiction thereof, except the Isthmian Canal Zone."

Subdivision (b), § 28, Act 1924 (43 Stat. 168): "The term 'alien' includes any individual not a native-born or naturalized citizen of the United States, but this definition shall not be held to include Indians of the United States not taxed, nor citizens of the islands under the jurisdiction of the United States."

Subdivision (a), § 12 (43 Stat. 160): "For the purposes of this Act nationality shall be determined by country of birth * * *."

Section 25, Immigration Law 1924 (43 Stat. 166), provides: "The provisions of this act are in addition to and not in substitution for the provisions of the immigration laws, and shall be enforced as a part of such laws. * * * An alien, although admissible under the provisions of this act, shall not be admitted * * * if he is excluded by any provision of the immigration laws other than this act, and an alien, although admissible under the provisions of the immigration laws other than this act, shall not be admitted to the United States if he is excluded by any provision of this act."

"Immigration laws" means all laws, conventions, and treaties relating to the immigration, exclusion, or expulsion of aliens. Act 1924, supra; Ex parte Goon Dip, supra. In Department Rules of February 1, 1924, on pages 92 and 93, is inserted a map introduced by the following title: "Map showing Asiatic zone prescribed in section 3 of the Immigration Act, the natives of which are excluded from the United States, and certain exceptions (sections indicated by diagonal lines covered by treaty and laws relating to Chinese). The Philippine Islands are United States possessions and therefore not included in the barred zone."

On page 105 of such rules, referring to section 1 of the act of 1917, it says: "For the purposes of the act citizens of the islands under the jurisdiction of the United States are regarded as though citizens of the United States." The immigration laws, taken together, obviously show that the word "alien" does not apply to the petitioner, a native-born of the Philippine Islands. By the rules of the Department of 1924, the act of 1917, supra, applies to every part of the United States except the Isthmian Canal Zone, and is enforced by the Immigration Service, except in the Philippine Islands, where it is enforced by the "officers of the general government thereof."

At common law, a native is a person born within the jurisdiction and allegiance of a country, irrespective of the allegiance of his parents, except the child of an ambassador. U. S. v. Wong Kim Ark, 169 U. S. 649, 18 S. Ct. 456, 42 L. Ed. 890; In re Look Tin Sing

(C. C.) 21 F. 905; U. S. v. Rhodes, 27 F. Cas. 785; McKay v. Campbell, 16 F. Cas. 157; Ex parte Chin King (C. C.) 35 F. 354. The petitioner, at birth September 26, 1898, was within the jurisdiction and allegiance of the crown of Spain. By the Treaty of Paris of December 10, 1898, he became, by failure to preserve such allegiance, a citizen of the Philippine Islands. He knows no other country; owes no other allegiance." "Undoubtedly, all persons born in a country are presumptively citizens thereof." U. S. v. Wong Kim Ark, supra, at page 718 (18 S. Ct. 483).

A person born in the Philippine Islands of a Chinese father and a Filipino mother, domiciled and residing in the Philippines, was admitted to bail in a deportation proceeding notwithstanding section 5, Act May 5, 1892 (Comp. St. § 4319) providing that a Chinese seeking to land and denied shall be denied bail (In re Go Siaco, 12 Phil. Rep. 490), and a person of similar status was held to be a citizen in Munoz v. Collector of Customs, 20 Phil. Rep. 494. The Supreme Court, in Gonzales v. Williams, 192 U. S. 1, 24 S. Ct. 177, 48 L. Ed. 317, held that "alien" has reference to persons owing allegiance to a foreign government; that citizens of Porto Rico are not "aliens."

Racially the petitioner may be a person of Chinese descent. Politically he is a native of the Philippine Islands. He is under the immigration laws neither an "alien" nor an "immigrant." He is in a class by himself, as is a Chinese born on the mainland of the United States, and is not within the intent and meaning of the exclusion laws.

The writ is granted.

### Supplemental Decision.

Almost immediately after filing the memorandum opinion on December 31, 1924, under press of other pending business, I found I had erred in not differentiating between a Chinese born on the mainland of the United States and the petitioner, by saying that a person born on the mainland of the United States is, by reason of section 1, art. 14, Const., a citizen and entitled to admission (In re Look Tin Sing, supra), while the petitioner, a person of Chinese descent, by reason of birth on an insular possession and the provisions of the Chinese exclusion laws and the Act of April 29, 1902, which applies the exclusion provisions to Chinese laborers, whether in the Philippine Islands or not at the time of session, and this exclusion being carried into the Act of February 5,

1917, which expressly states in section 38 that the laws excluding persons of Chinese descent is not changed, and this intent being carried into the act of 1924, section 25 of which provides that no one shall be admitted if excluded by any former act, is of a different political status, as well as racial exclusion. The conclusion that the petitioner is not within the meaning of the exclusion laws is therefore erroneous, and should be is within the Exclusion Act, and the writ should be denied.

It is so ordered.